In re John Alden SETTLE, Jr. d/b/a Springfield Electronics Company, Springfield Engineering Company, Alarm Engineering Company, American Management Company and American International Management Company, Debtor.

Bankruptcy No. 79–138.

United States Bankruptcy Court, D. New Hampshire.

Sept. 6, 1984.

John Alden Settle, Jr., debtor, pro se.

Peter Espiefs, Keene, N.H., trustee.

## ORDER

JAMES E. YACOS, Bankruptcy Judge.

This case came before the court for a hearing on August 27, 1984 pursuant to a Notice of Intended Sale filed by the trustee on June 5, 1984, and an objection thereto filed June 27, 1984 by the debtor pro se, on his own behalf, and also purporting to be on behalf of Joanna Claire Settle.

The notice of sale required any objections to be filed by June 25, 1984, but the court overruled the trustee's objection in that regard and heard the debtor on his objection to the sale. At the conclusion of the hearing the court dictated various findings and conclusions into the record, which are hereby incorporated by reference, and announced its ruling that the objections to the sale could not be sustained, as a matter of the law of this case.

The matter is one of some urgency since the assets in question have been accumulating administrative storage costs ever since the trustee obtained possession of the same in 1979 from locations at which they had been secreted by the debtor. The delay apparently has been due to various lawsuits and appeals which were pursued by the debtor in this and other proceedings. Suffice it to say that the assets at the Massachusetts location apparently are not worth much more than the storage costs that now have accumulated against them. The assets in the Vermont locations, while having excess value, are subject to substantial storage charges that are eroding the equity that would otherwise be available for a dividend to creditors in this estate.

The heart of the objection the debtor raises to the sale is that Judge Betley, the then bankruptcy judge, improperly deter-

mined in several orders entered in 1981 that ownership of the assets in question had vested in the trustee, free of various claims of the debtor and his relatives thereto. See 14 B.R. 31.

This matter has previously been exhaustively litigated by the debtor and trustee, both by direct appeal in this proceeding, and in a separate lawsuit brought by the debtor in the U.S. District Court in Vermont. These matters were taken up to the First Circuit and Second Circuit Court of Appeals, respectively, with denial of certiorari by the U.S. Supreme Court, and have been determined adversely to the debtor and such rulings became final in the present case on December 13, 1982, and in the Vermont case on March 30, 1984. For ease of reference, the pertinent orders and decisions are attached as Annexes A through H to this Order. (Vt. Orders appear as Ex. C to Trustees 7/17/84 Motion to Dismiss herein.)

In a transparent attempt to avoid the binding effect of the foregoing, the debtor has added a motion to set aside Judge Betley's orders under FRCP 60(b) (adopted by Bankruptcy Rule 9024 with certain changes) within his objection to the sale, asserting "void judgment" by Judge Betley. He also demanded in his pleading that the "Motion" be heard before an Article III Judge. However, he was ambivalent at the hearing as to whether he did or did not submit the "Motion" to the undersigned for ruling. In the circumstances, since I believe the motion is not sustainable, as a matter of law, and that the issue is inseparable from the objection to the sale in any event, I include that ruling in this order. No prejudice arises since the District Judge in any appeal will be able to consider that legal question de novo.

The basic ground set forth in the body of the debtor's pleading is that Judge Betley's "default judgment" was void because it granted relief in excess of that requested by the trustee in any formal complaint, in violation of FRCP 54(c), and the judgment therefore was void and can be set aside under FRCP 60(b)(4).

The judgment in question was entered after several days of trial when the debtor's wife failed to reappear after vigorous cross-examination had commenced, and due to a pattern of repeated late appearances by the debtor. Passing the question of whether this was a "default" within the meaning of Rule 54, it is abundantly clear from the early record of this case that the debtor was quite clearly apprised of the "relief" involved.

The trustee had seized the assets in question by virtue of ex parte orders entered by the bankruptcy judge on the basis that the debtor had deliberately secreted the assets and not disclosed them on his schedules.

The issue for determination at the hearings in December 1980 and January 1981, therefore, was quite clearly the question of any ownership rights that the debtor or his relatives had in assets which were already in the trustee's possession under a claim of right. The First Circuit notes that the notice of the hearings in question specified such was the issue for determination. (See Annex H, page 1, paragraph 1) As a matter of law I conclude that the entire record of these proceedings prior to the hearings, and the nature and circumstances surrounding the entry of the judgment, do not constitute a violation within the scope of Rule 54(c). Accordingly, there is no legal basis to support a Rule 60(b)(4) setting aside of the judgment on the "voidness" ground.

The debtor also includes a short reference at the outset of the motion to effect that the judgment was not only void, but also was obtained "by fraud, collusion, corruption of the court & ex parte communication with the court", without any further specification of specific facts alleged to establish such fraud and collusion. Presumably the debtor seeks to set aside the judgment on the "fraud" provision of Rule 60(b)(3).

To the extent that this "ground" relates to the simple fact of ex parte contacts, between the judge and the trustee, that contention certainly has been loudly proclaimed by the debtor in the various ap-

peals and the adverse determination thereon is now res judicata and final.

To the extent the debtor seeks to assert some new contention of actual fraud on the part of the bankruptcy judge and the trustee, FRCP 9(b) (adopted by B.R. 7009) requires that such allegations be set forth with particularity. This noncomplying pleading accordingly can be stricken in this respect for that reason alone. Moreover, in the circumstances of the assets of this estate being eaten up by storage charges as set forth above, this contention can appropriately be stricken with prejudice—in a motion filed one and one-half years after the judgment in question became final by denial of certiorari in the Supreme Court.

Independently, Rule 60(b) requires subsection (b)(3) fraud motions to be filed within one year of the entry of the judgment being challenged. While Bankruptcy Rule 9024, in adopting Rule 60 exempts certain matters from any one-year limitation, neither exemption applies here in the judgment of the court. Even if the one-year limitation were found inapplicable for any reason, the court would conclude that the resulting "reasonable time" standard in Rule 60 would not be satisfied in this case. In addition to the long delay since the entry of the judgment, the court notes that the debtor's contention of "new" fraud grounds comes some ten months after the death of Judge Betley in August of 1983. He is no longer here to defend himself.

Finally, it is apparent throughout the debtor's pleading, as confirmed by his oral argument before the court, that his most vociferous complaint is that he has never had a chance to present his full case to this court. That is quite correct—in the sense that Judge Betley terminated the 1980–81 hearings as indicated. But it was precisely the issue of whether Judge Betley was *justified* in so acting that was the subject of the appeals that were taken by the debtor. The law of this case now is that Judge Betley *was* justified in his action. I have no warrant to second-guess that action at this stage, and in my opinion the present objections and motions are simply an effort indirectly to get "one more bite" of that apple.

Wherefore, in accordance with the foregoing findings and conclusions, it is accordingly

ORDERED, ADJUDGED and DECREED as follows:

1. The trustee is authorized to proceed with the sales as set forth in his Notice of Intended Sale filed June 5, 1984, and as further provided hereunder.

2. The objection to the sale, and all Rule 60(b) motions to set aside judgment contained therein, filed by the debtor as indicated above on June 27, 1984, are hereby denied, with prejudice, and without leave to amend.

3. The trustee shall proceed at the earliest practicable time with a public auction of the personal property stored at Bolster Warehouse, Brattleboro, Vermont, and in Keene, New Hampshire. Said auction shall be conducted by auctioneer Paul Lawton and Son of West Chesterfield, New Hampshire at Lawton's auction barn, Brattleboro, Vermont. The auctioneer Lawton shall receive 20 per cent of the gross sales as his compensation, which includes his services in addition to the necessary expenses of promoting and conducting the auction.

4. The personal property of the debtor stored at Hallmark Van Lines Warehouse, Holyoke, Massachusetts, is subject to a warehouseman's lien for storage charges in excess of $5,500. The trustee shall make prompt arrangements with Hallmark for a Warehouseman's Lien Sale (under the laws of Massachusetts) with the understanding that all proceeds therefrom in excess of Hallmark's lien and necessary expenses of sale be the property of, and be paid over to, the trustee.